## AFFIDAVIT

I, Matthew Gary, Special Agent ("SA") of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), United States Department of Justice, being duly sworn under oath, hereby depose and state:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a law enforcement officer of the United States, and under 18 U.S.C. § 3051. I am empowered by the Attorney General to conduct investigations, enforce criminal, seizure, and forfeiture provisions of the laws of the United States, carry firearms, serve warrants and subpoenas issued under the authority of the United States, make arrests without a warrant for any offense against the United States committed in my presence, and make arrests for a felony offense under the laws of the United States if there are reasonable grounds to believe that the person to be arrested has committed or is committing such a felony.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice, and have been so employed since January 2009. Prior to becoming a Special Agent with ATF, I was an Immigration Enforcement Agent with the Bureau of Immigration and Customs Enforcement ("ICE") – Detention and Removal Office from July 2006 through January 2009.  I completed the ICE Immigration Officer Basic Training Course, the Criminal Investigator Training Program and ATF Special Agent Basic Training at the Federal Law Enforcement Training Center in Glynco, Georgia.  In addition to the firearms, arson, and explosives related training received in these courses, I have also conducted and participated in numerous investigations involving the unlawful use, possession, and transfer of firearms, firearms trafficking, and narcotics.  To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources, including but

not limited to surveillance, confidential informants, controlled purchases, electronic surveillance, exploitation of telephone and social media data, interviews, and the review of financial documents.

3.      As a law enforcement officer, I have conducted and/or assisted in numerous investigations involving the possession and/or trafficking of firearms and narcotics in violation of State and Federal laws, as well as the use of firearms in furtherance of other criminal offenses.  In conducting these investigations, I have utilized a variety of investigative techniques and resources, including but not limited to surveillance, confidential informants, undercover agents, controlled purchases, trash pulls, social media research, queried electronic databases, interviews, and search warrants.  During these investigations, I have learned that firearms are often acquired through third parties, due to the subjects of investigation being prohibited from legally purchasing firearms.  Like drug distribution and trafficking, individuals engaged in illegal firearms trafficking utilize electronic devices, such as cellular phones, and social media websites/applications to communicate with their customers and suppliers.

4.      Over the course of my career with ATF, I have investigated scores of instances involving illegal firearm possession and possession of narcotics and am aware of scores of other instances investigated by others within the ATF.  Based on those investigations, it has been my experience that those who illegally possess firearms and narcotics often use cellphones and other electronic devices to post to social-media platforms, such as Facebook, to communicate with others about their possession of contraband.  In reviewing evidence associated with my above referenced investigations, it has been my experience that suspects publish photographs and/or videos of their firearms, narcotics, and/or profits of selling the contraband on social-media platforms.

2

5.     The facts contained in this Affidavit are based upon my personal knowledge of the investigation, in addition to general knowledge, training, and experience, and the observations, knowledge, training, and experience of other officers and agents.  All observations referenced below that were not personally made by me, were relayed to me by those who made such observations, either verbally or via reports written by those agents and/or officers.

6.     This Affidavit is intended to show only that there is sufficient basis for a criminal complaint and does not set forth all of my knowledge about this matter.

7.     Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of Title 18, U.S.C. Section 922(u); that is, it shall be unlawful for a person to steal or unlawfully take or carry away from the person or the premises of a person who is licensed to engage in the business of importing, manufacturing, or dealing in firearms, any firearm in the licensee's business inventory that has been shipped or transported in interstate or foreign commerce ("the Target Offense), were by committed by **Brendan NICHOLS (DOB: 2/7/1995)**, and others.

<u>**PROBABLE CAUSE**</u>

8.     Rattlesnake Hill Sporting Goods, 675 State Route 534, Newton Falls, Ohio 44444, is a Federal Firearms Licensee ("FFL") and has been in operation since 1997. Rattlesnake Hill Sporting Goods has been assigned License Number X-XX-XXX-XX-XX-XXX31, by the Bureau of ATF.

9.     On March 5, 2023, at approximately 3:30 p.m., four unidentified males arrived at Rattlesnake Hill Sporting Goods, located at 675 State Route 534, Newton Falls, Ohio 44444, which is which located in the Northern District of Ohio, Eastern Division.  Rattlesnake Hill Sporting Goods is a FFL that sells firearms and ammunition.  The individuals exited a red Saturn

3

Vue ("the Saturn") and entered the store.  As they entered the store, the store dog, Marvin, a brown Labrador Retriever, barked and scared three of the individuals who fled the store.  After approximately one minute, the three individuals began looking into the windows of the store which caught the attention of a passerby who called 911 to report suspicious people lurking around the firearm store.  Within a couple of minutes, all three individuals re-entered the store.

10.     On March 5, 2023, at 3:42 p.m., one of the individuals in the group purchased two boxes of 9mm ammunition using a debit card.  Utilizing his Clover credit card processing system, the store owner, Todd Garland, checked the individual out.  The individual inserted his debit card and entered his pin number into the Clover machine.  The Clover machine captured the last four digits of the Visa as 1473 and the cardholder's name as Daquantae KIMBROUGH ("KIMBROUGH").

11.     The store owner estimates that the individuals were in his store for approximately 10 minutes before they departed in the red Saturn Vue.

12.     On March 6, 2023, at approximately 2:29 a.m., Trumbull County Sheriff's Office (TCSO) Deputy Zigmont and Sgt. Carr responded to a call for breaking and entering at Rattlesnake Hill Sporting Goods.  As Deputies were enroute to the call for service, they were advised by dispatch that a witness observed two males in dark clothing with ski masks run out of Rattlesnake Hill Sporting Goods with several items in their arms.  According to the witness, the items appeared to be wrapped in a pillowcase or towel.  Additionally, the witness described the males entering a red Saturn Vue and being followed by a white Ford Escape traveling north on State Route 534.

13.     On March 6, 2023, I was made aware of the FFL burglary and learned from ATF Task Force Officer ("TFO") and Mahoning County Sheriff's Department Deputy Joseph

4

Hamilton that KIMBROUGH's girlfriend is Alyssa Harrison ("Harrison").  Harrison was booked

into the Mahoning County Justice Center (MCJC) on January 19, 2023, on a probation violation

through the Adult Parole Authority.  TFO Hamilton began to query the Mahoning County Jail

phone records for any phone calls made by Harrison to KIMBROUGH.  TFO Hamilton

identified one potential phone call which was made at approximately 10:00 a.m. on March 6,

2023.  Harrison called an individual, who TFO Hamilton knew as KIMBROUGH.

KIMBROUGH stated he had just woken up and that he was at his mom's house.  Harrison asked

KIMBROUGH "…what did you get into last night?"  KIMBROUGH told her he could not talk

about it over the phone.  KIMBROUGH stated later in the phone call that he was planning to

visit her at the Mahoning County Jail later that same day.  TFO Hamilton and I confirmed

through the Mahoning County Justice Center that KIMBROUGH did have a scheduled visit with

Harrison on this date at approximately 3:45 p.m.

14.     Later that day, I learned TCSO Detective John Dina confirmed KIMBROUGH

had an active warrant for Theft, issued by the Girard Municipal Court, Girard, Ohio.  I also was

afforded the opportunity to view still photos taken from the store surveillance video at

Rattlesnake Hill Sporting Goods of the suspects.

15.     On March 6, 2023, at approximately 3:30 p.m., TFO Hamilton and I were

conducting surveillance in the parking lot of the Mahoning County Jail.  TFO Hamilton and I

observed the Saturn pull into the parking lot, and KIMBROUGH exited the Saturn from the

passenger seat.  I observed a white male driver having a beard that matched the description of

photos I had seen from the surveillance photos at the FFL.  The driver of the Saturn was later

identified as **Brendon NICHOLS**.  KIMBROUGH entered the building and TFO Hamilton and

I followed the Saturn as it departed the parking lot.

16.     The Saturn traveled west on Mahoning Avenue where we were able to obtain the license plate bearing Montana tag M538141B.  I later learned that this vehicle was registered to Kristen Bock, who is the mother of **NICHOLS.**  We followed the vehicle south on Glenwood Avenue, and it entered into the Millcreek Metro Park.  I observed the Saturn to stop briefly while in a gravel parking lot on the side of East Glacier Drive.  I pulled closer to the vehicle and activated my red and blue lights to conduct an investigatory stop.  Upon doing so, the Saturn accelerated out of the parking area and proceeded to drive at a high rate of speed through the Millcreek Metro Park.  I initiated my audible siren upon the Saturn fleeing and attempted to follow the vehicle.  The Saturn was driving in a dangerous manner and high rate of speed past pedestrians in the park which roads have multiple curves.  We lost sight of the vehicle and discontinued surveillance.

17.     At approximately 4:00 p.m., TFO Hamilton and I returned to the Mahoning County Jail and made contact with KIMBROUGH at the conclusion of his visit with Harrison. KIMBROUGH was advised of the outstanding arrest warrant and secured in handcuffs. KIMBROUGH was then taken to an interview room.

18.     Detective Dina, TCSO Detective Jolene Marcello, and ATF SA Matthew Harrell interviewed KIMBROUGH.  SA Harrell advised KIMBROUGH of his constitutional rights, by way of a Miranda Warning.  KIMBROUGH stated he understood his rights and waived his right to have an attorney present during questioning by signing an ATF waiver form.  I observed a portion of this interview and learned that **NICHOLS** dropped KIMBROUGH off at the Mahoning County Jail for the visitation and was involved in the theft of firearms from Rattlesnake Hill Sporting Goods.

19.     I learned through ATF Intelligence Research Specialist ("IRS") Rob Little that Kristen Bock and **NICHOLS** had an address of 4002 Baymar Drive, Boardman, Ohio.  IRS Little also conducted a Computerized Criminal History ("CCH") for **NICHOLS** and I was able to view his photo associated with a Failure to Appear warrant.  I confirmed the driver of the Saturn was the same individual in this photo.  IRS Little also conducted a search of open-source Facebook username "Daquantae Kimbrough" who was found to be Facebook friends with "Brendon Nichols."  I viewed photos from the Facebook page of "Brendon Nichols" and found this page was associated and used by **NICHOLS**.  Furthermore, a post at approximately 4:28 p.m. on March 6, 2023, read "To my friends and family I want you all to know that I fucking love you all so much and I'm sorry for messing up all the time.  I've really tried to be better….."

20.     At approximately 4:50 p.m., I received a call from Resident Agent in Charge ("RAC") John Smerglia who notified me that he and other personnel were at 4002 Baymar Drive, Boardman, Ohio.  ATF personnel there had attempted to contact residents to no avail and then proceeded to speak with neighbors.  One neighbor informed ATF that a red Saturn Vue had recently arrived at the residence and parked within the garage.  The garage door was closed, and no vehicles were visible at this time.

21.     TFO Michael Bender and I then traveled to 4002 Baymar Drive, Boardman, Ohio to assist.  Upon our arrival to the residence, I observed ATF personnel in the driveway and a female, later identified as Kristen Bock with them.  I then heard and observed someone briefly yell from the front door something to the nature of "fuck you all" and then quickly closed the front door.

22.     I spoke with Kristen Bock, who said she was the mother of **NICHOLS**.  I requested Bock to call **NICHOLS** on her cellular telephone so I could speak with **NICHOLS**.

NICHOLS answered the phone and was yelling and agitated.  NICHOLS said he was not going to come out of the house and did not want to go back to prison.  NICHOLS said he would rather die than return to prison and that law enforcement would need to shoot him or he would shoot himself.  I spoke with NICHOLS for several minutes and the conversation began to deescalate. After several more minutes, NICHOLS agreed to exit the front door of the residence and surrendered without incident.  TFO Bender and I spoke with NICHOLS on the front porch and then moved to my ATF vehicle for an interview.

23.     NICHOLS was verbally advised of his constitutional rights, by way of a Miranda Warning.  NICHOLS stated he understood his rights and waived his right to have an attorney present during questioning and agreed to speak with TFO Bender and I.  We informed NICHOLS that we were investigating the gun store theft at Rattlesnake Sporting Goods and wanted to recover the firearms that were taken.  NICHOLS stated the firearms that he took were in an upstairs bedroom of the residence within the closet and wrapped together in some type of material.  He described them as rifles and shotguns and pointed to the window of the house that corresponded to the bedroom where they were located.

24.     We continued to interview NICHOLS who eventually admitted his role in the theft of firearms from Rattlesnake Sporting Goods.  NICHOLS stated he was present with KIMBROUGH in Warren, Ohio, and he or one of his (KIMBROUGH's) friends wanted to purchase ammunition.  NICHOLS looked on his phone to see which gun stores were open at that point which led them to Rattlesnake Sporting Goods.  NICHOLS stated he and KIMBROUGH picked up two of KIMBROUGH's friends and the four of them went to the FFL. NICHOLS said all four of them entered the FFL and were looking at firearms.  NICHOLS stated KIMBROUGH had purchased ammunition using his debit or credit card during this visit.

NICHOLS said he drove his mother's red Saturn Vue and continued to use the vehicle throughout the night.

26.    NICHOLS said they were driving around for a few hours then returned to the FFL when it was dark out.  NICHOLS said they had been drinking alcohol prior to returning to the FFL.  When it was dark out, they returned to the FFL and viewed the front door and how it was secured.  NICHOLS thought he, KIMBROUGH, and one of KIMBROUGH's friends had looked at the door to see how they could gain entry.  NICHOLS said they departed and traveled to NICHOLS's residence to get bolt cutters prior to returning to the FFL to commit the theft.

26.    NICHOLS stated they returned to the FFL in two vehicles.  NICHOLS drove KIMBROUGH and another individual in the red Saturn View.  KIMBROUGH's two friends drove a gray Pontiac.  NICHOLS said he used the bolt cutters to gain access to the FFL. NICHOLS stated he had to kick the door of the FFL several times until entry was made.

27.    NICHOLS stated he had observed firearms that he liked during the earlier visit in the daytime and grabbed as many of those long guns as he could.  NICHOLS said after they exited the FFL, they placed all of the firearms within the Pontiac.  NICHOLS said he and KIMBROUGH returned to his residence where the firearms were left in the Saturn until NICHOLS's mother departed for work in the morning.  After Bock went to work, NICHOLS brought his share of firearms within his residence and eventually stored them within the closet of the upstairs bedroom.  NICHOLS said KIMBROUGH brought a backpack within his residence which he believed KIMBROUGH had taken to the basement. NICHOLS stated one firearm was bubble wrapped and he had placed it in a cooler in the basement and locked it.

28.    NICHOLS stated he had not had a chance to sell any of the firearms and didn't think KIMBROUGH did either.  NICHOLS said he and KIMBROUGH were together at his

residence the entire day until leaving to take KIMBROUGH to the jail visitation with his girlfriend.  **NICHOLS** stated he drove the Saturn to the Mahoning County Jail and dropped KIMBROUGH off.  **NICHOLS** said he fled from me in the Mill Creek Park because he didn't want to go back to prison and returned to his residence and parked the vehicle in the garage so it couldn't be seen.  **NICHOLS** said after returning to the residence he shaved his beard to possibly confuse law enforcement as to his identity.

29.    While this interview was being conducted, Bock had provided ATF consent to search the residence and the Saturn.  SA Elizabeth Gardner completed a Receipt for Property and Other Items seized by ATF in relation to this search.  Firearms located in the upstairs bedroom closet were described as a Savage Arms rifle bearing serial number 4068794; Savage Arms rifle bearing serial number 4106057; Savage Arms rifle bearing serial number WP167934; Rossi rifle bearing serial number 7CB050041R; Winchester shotgun bearing serial number L2525935; and a Hatsan Arms Co. shotgun bearing serial number 701478.  Three firearms were located within a backpack in the basement of the residence.  Those firearms were described as a Ruger, Model LCPII, semi-automatic pistol bearing serial number 380697465; Ruger, Model LCPII, semi-automatic pistol bearing serial number 381103170; and a Smith & Wesson, Model M&P Shield 9, semi-automatic pistol bearing serial number JNA5999.  One firearm was found within a locked cooler in the basement.  This firearm was described as a Smith & Wesson Shield semi-automatic pistol bearing serial number HZE8700.  These ten firearms were confirmed to have been taken from Rattlesnake Hill Sporting Goods.

30.    Additionally, a pair of red bolt cutters was located in the garage of the residence.

31.    Later in the interview, **NICHOLS** was brought into the residence.  At this time, he confirmed the backpack containing the firearms in the basement was the same one

KIMBROUGH brought into the residence.  **NICHOLS** also confirmed the red bolt cutters was the same tool he had used to make entry into the FFL.

32.     The interview concluded and **NICHOLS** was transported to the Mahoning County Jail.

33.     On March 7, 2023, I spoke with ATF SA Jason Petaccio who is an interstate-nexus expert.  SA Petaccio reviewed the list of firearms stolen from Rattlesnake Hill, which totaled 34.  Special Agent Petaccio told me all of the firearms were manufactured outside the State of Ohio and therefore, had traveled in and affected interstate and/or foreign commerce.

## **CONCLUSION**

34.     Based upon the above listed facts and circumstances, there is probable cause to believe that in the Northern District of Ohio, Eastern Division, **Brendan NICHOLS** did steal and/or take firearms, which had been shipped or transported in interstate commerce, from a Federal Firearms Licensee, which was Rattlesnake Hill Sporting Goods, on March 6, 2023, in violation of Title 18, United States Code, Section 922(u).

Matthew Gary
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Sworn to via telephone after submission by reliable electronic means.  Fed. R. Crim. P. 4.1 and 41(d)(3) this  8th   day of March, 2023.

Honorable Carmen E. Henderson
United States Magistrate Judge
Northern District of Ohio
Eastern Division